David J. McGlothlin, Esq. (SBN 026059)
david@southwestlitigation.com
**Hyde & Swigart**
2633 E. Indian School Road, Ste. 460
Phoenix, AZ 85016
Telephone: (602) 265-3332
Facsimile:  (602) 230-4482

Ryan L. McBride, Esq. (SBN 032001)
ryan@kazlg.com
**Kazerouni Law Group, APC**
2633 E. Indian School Road, Ste. 460
Phoenix, AZ 85016
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Gabriel C. Quintanilla,** | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| v. | |
| **Equifax Information Services, LLC,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods

**COMPLAINT**  1

undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. GABRIEL C. QUINTANILLA ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of EQUIFAX INFORMATION SERVICES, LLC ("Equifax") (or jointly as "Defendants") with regard to erroneous reports of derogatory and negative credit information made by Defendants to national reporting agencies, and for failure of Defendants to properly investigate, and this conduct caused Plaintiff damages.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants took place in Arizona.

6. Any violations by Defendants were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs,

successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; Jurisdiction arises for Plaintiff's supplemental state claims under 28 U.S.C. § 1367.

9. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

10. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Maricopa County, the State of Arizona and Defendants are subject to personal jurisdiction in the County of Maricopa, State of Arizona as they conduct business there, and the conduct giving rise to this action occurred in Arizona. 28 U.S.C. § 1391(b)(2).

## PARTIES

11. Plaintiff is a natural person residing in the County of Maricopa, State of Arizona. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

12. Defendant Equifax is a foreign limited liability company and a national credit reporting agency doing business in the State of Arizona, with a principal place of business in Georgia.

## GENERAL ALLEGATIONS

13. At all times relevant, Plaintiff was an individual residing within the State of Arizona.

14. At all times relevant, Defendants conducted business in the State of Arizona.

15. On or about March 16, 2011, Plaintiff filed for a Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Arizona in order to obtain a fresh start and rebuild his credit. Plaintiff's case was assigned Case Number 2:11-bk-06738 (the "Bankruptcy").

16. The obligations ("Debt") to each defendant were scheduled in the Bankruptcy and Defendants, the Creditors, received notice of the Bankruptcy.

17. On or about July 10, 2014, Plaintiff received a Bankruptcy discharge.

18. None of the Defendants filed any proceedings to declare their Debt "non dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

19. Defendants also did not request relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any *personal* liability for any of the underlying Debts.

20. Accordingly, the Debt to each defendant was discharged through the Bankruptcy.

21. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal for any of the Defendants to report any post-Bankruptcy derogatory collection information.

22. Plaintiff was in a chapter 13 bankruptcy plan beginning February 6, 2012.

23. A chapter 13 plan alters obligations and creates new contractual obligations for the consumer filing for bankruptcy and their creditors.

24. Plaintiff was bound, as were Plaintiff's creditors, to the payment terms proposed and ordered by the court in Plaintiff's chapter 13 plan.

25. It was impossible for Plaintiff to be delinquent on any of Plaintiff's accounts included in his chapter 13 plan because Plaintiff was required to make specific payments under the new contractual obligations through his chapter 13 plan.

26. During the interim pre-discharge bankruptcy period, Plaintiff paid all his creditors according to his chapter 13 plan and confirmation order.

27. Defendants' attempt to collect upon their respective Debt by reporting post-Bankruptcy derogatory information during Plaintiff's chapter 13 plan was therefore false or inaccurate and also prohibited by the automatic stay or Discharge.

28. Plaintiff subsequently learned that each of the named Defendants reported post-Bankruptcy derogatory credit information regarding the obligations on Plaintiff's credit reports, thereby causing erroneous, inaccurate, and negative credit information in Plaintiff's credit files.

29. The Consumer Data Industry Association ("CDIA") is an international trade association of corporate members involved in credit reporting and other consumer-related services.

30. To help furnishers comply with their requirements under the FCRA, the CDIA publishes standard guidelines for reporting data called the Metro 2 Format.

31. The Metro 2 Format guidelines for credit reporting are nearly identical for reports made during the "Months Between Petition Filed and BK Resolution" and after "Plan Completed." *See* CDIA Credit Reporting Resource Guide, page 6-20, 21.

32. Notably, the payment history and account status guidelines are the same, meaning that the payment history and account status should be reported the same way **both during and after** bankruptcy proceedings. (emphasis added) *Id.*

33. The continued reporting of erroneous, inaccurate, and derogatory information negatively impacted Plaintiff's credit and his "fresh start".

### Equifax Misreported Credit Information

34. In an Equifax credit report dated February 19, 2015, Equifax reported the following inaccurate, derogatory information:

- Wells Fargo Home Mortgage Account No. 708003387XXXX: Post-bankruptcy information for the following dates: October 2012 (Date Major Delinquency First Reported).

35. Equifax should not have reported derogatory information on Plaintiff's account after March 16, 2011, because Plaintiff filed for Bankruptcy on March 16, 2011.

36. Equifax especially should not have reported derogatory information on Plaintiff's account after February 6, 2012 because Plaintiff's Chapter 13 plan was confirmed on February 6, 2012.

37. On or about March 24, 2015, Plaintiff disputed Equifax's reported information regarding the Debt pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Equifax.

38. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed as follows:

- Wells Fargo Home Mortgage account number 708003387XXXX is reporting incorrectly on my credit reports. They are reporting a major delinquency first reported in September 2012. Since this debt was included in my bankruptcy, this is not accurate.

39. The Equifax Dispute Letter further requested that Equifax:

- This is damaging my credit I request that you re-investigate these accounts and immediately correct these errors.

COMPLAINT 6

40. Plaintiff sent a second dispute letter, certified, return receipt to Equifax on or about November 5, 2015 requesting the above inaccurate and incorrect derogatory information be removed as follows:

- Account number 708003387XXXX: This account was discharged in my Bankruptcy which was filed on 03/16/2011 and discharged July 2014, bearing Case No. 2:11-bk-006738 in the District for Arizona. There should be no derogatory reporting after the filing date. Specifically, please remove the inaccurate, derogatory information for the following post-bankruptcy dates: September 2012 (Date Major Delinquency First Reported).

41. The Equifax Dispute Letter further requested that Equifax:

- Immediately delete this account and the disputed derogatory information from [Plaintiff's] credit report.
- The discharged debt should be reported with an account balance of $0 with a status of "current".
- Further, there should be no post-bankruptcy activity reported on this account. The date of last activity on this account should pre-date my bankruptcy filing date, 03/16/2011, since a default on this account occurred no later than the Bankruptcy filing date.
- Any post-bankruptcy derogatory information should be immediately deleted from [Plaintiff's] report.
- If [Equifax] do[es] not immediately delete this from [Plaintiff's] credit report, please include a 100-word statement in my credit report of all of the disputed information contained in this letter regarding this account.

COMPLAINT                                                  7

42. Equifax was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.
43. On or about May 14, 2015, Plaintiff received notification from Equifax that Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and Equifax verified the account had been updated.
44. Surprisingly, rather than remove all the derogatory information from Plaintiff's report, Equifax simply left derogatory information on Plaintiff's report.  Specifically, Equifax reported the following  inaccurate, derogatory information:

- Wells Fargo Home Mortgage Account #708003387XXXX: Post-bankruptcy information for the following dates: October 2012 (Date Major Delinquency First Reported).

45. Equifax reported a "Date Major Delinquency First Reported" on Plaintiff's Wells Fargo Home Mortgage Account #708003387XXXX in October 2012.
46. Plaintiff was in a chapter 13 bankruptcy plan in and before October 2012 when this major delinquency is being reported.
47. A chapter 13 plan alters obligations and creates new contractual obligations for the consumer filing and their creditors.
48. Plaintiff was bound, as was Wells Fargo Home Mortgage, to the payment terms proposed and order by the court in his chapter 13 plan.
49. It was impossible for Plaintiff to be delinquent on his Wells Fargo Home Mortgage account because Plaintiff was required to make payments under the new contractual obligations through his chapter 13 plan.
50. Thus, Equifax reporting that there is a major delinquency after Plaintiff's chapter 13 plan was confirmed is blatantly inaccurate.

51. In addition, Plaintiff made his Wells Fargo Home Mortgage payments according to his chapter 13 plan and confirmation order, making any reporting of delinquency after filing for bankruptcy inaccurate.
52. Equifax did not comply with CDIA's Metro 2 reporting standards when it reported post-bankruptcy information.
53. Plaintiff's account was not reported by Equifax as the Metro 2 Format instructs, making the reporting inaccurate.
54. Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).
55. Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).
56. Due to Equifax's failure to investigate, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).
57. Plaintiff's continued efforts to correct Equifax's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with Equifax were fruitless.
58. Equifax's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.
59. Equifax's inaccurate and negative reporting damaged Plaintiff's creditworthiness.
60. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, Equifax failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

///

///

# FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

61. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

63. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

64. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

///
///
///
///
///

COMPLAINT                                10

# FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA; and
- any other relief the Court may deem just and proper.

## TRIAL BY JURY

65. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 22, 2016                                   Respectfully submitted,

                                        BY: /s/ RYAN L. MCBRIDE_____
                                             RYAN L. MCBRIDE, ESQ.
                                             ATTORNEY FOR PLAINTIFF